of America, et al. Mr. Lane for the appellant, Ms. Kelly for the appellees. Mr. Lane, good morning. May it please the Court. In this habeas case, Carlton Blount claims that his appellate counsel's failure to challenge the constitutionality of the accomplice instruction given at trial amounted to constitutionally ineffective assistance. His petition was dismissed as untimely, and that was an error. His petition is timely for three separate reasons. First, the D.C. Court of Appeals reset the limitations clock under Jimenez by, in fact, reopening Mr. Blount's direct appeal in the course of resolving his motion to recall the mandate. That's not what they claimed they did, though, right? I believe that they say that they denied the motion to recall, but under the long case, they can use a collapsed procedure where they determine the underlying merits in the posture of deciding the recall motion. That's a little bit unusual. I mean, typically they will say, we've recalled the mandate, we've reopened it, let's get going. They didn't do anything like that here, did they? Well, they actually I believe that there's strong indications in the order that that's what they did. They said that they decided... Let's start with this. They didn't say they did that, right? They didn't say that explicitly. What they said was, first of all, they had a motion before them that clearly meets the recall standard. It contains non-conclusory arguments and factual support of a legitimate prima facie valid claim. So it clearly met the recall standard. And then when they decided the motion, they said that the error was harmless based on a review of the entire record. And that is something that the DCCA has said it does in the reopened appeal posture. Long says, when we get to the reopened appeal, we review the whole record. It would not make sense for the recall stage of this to entail a review of the whole record. Then there would be no distinction between a recall and a reopened appeal. So my notes show that they expressly ordered, quote, that the motion to recall mandate is denied. That's pretty strong language. I know you're arguing for this sort of functional opening. That gets us into murky... That gets us into dangerous territory, doesn't it? I mean, there are finality principles here. We're dealing with the state court system. You're asking us to wade into that in a troublesome way, I think. Well, I appreciate your concern, but I think that there would be a lot of ways for the DCCA to be clear that it's not, as a functional matter, reopening the appeal by saying... How about the motion to recall mandate is denied? That isn't clear enough? Well, I think that's what you might expect to happen, given the collapsed procedure that Long created, which is, in the posture of the recall motion, we can decide the merits. So they don't have to go through the sort of formalist rigmarole of saying, well, we're going to grant the recall motion, but we're simultaneously denying the underlying appeal. They can just say, we're denying the recall motion because we've considered the merits all the way down to the bottom in this case. And I think that the court could prevent confusion about this by using language that signals that it is really determining this as a prima facie matter, no prima facie valid claim, frivolous claim, only conclusory arguments, things of that nature. I mean, I appreciate you're trying to struggle with extreme uncertainty, but the sort of bottom line in the two-stage process, the bottom line for stage one is refusing to recall the mandate. That is, but I think that now that there's a collapsed procedure, the mechanism for disposing of the case of the motion, whether at the prima facie stage or the merits stage, can be an order saying the motion to recall is denied. And that's what I think happened here. And that's why they looked at, when they say that they reviewed the entire record, I think that that is, and let me just step back for a second. Under Jimenez, the key question is whether the conviction was capable of modification, not whether the mandate was recalled. Once the DCCA is saying, we are looking at the entire record here, because we know that an invalid instruction was given and relied upon by the jury, and we are now, and we have a good motion in front of us, we're going to go all the way down to the bottom on the facts here, that that means that that judgment was capable of modification at that point. So under Jimenez, that restarts the clock. If I may, I don't want to lose, I think this is an important argument, but I also don't want to lose sight of the other two bases for concluding that the petition is timely. Under Rines, Mr. Blount was entitled to a stay and abeyance pending exhaustion. And the failure of the district court to provide that stay is a basis for equitable tolling, because it deprived him of the ability to obtain federal review of his conviction. Exhaustion rule under Rose v. Lundy and Rines is intended not to foreclose federal review, but simply as a matter of comedy, it creates a sequencing rule. You have to first go to state court, and then you can go to federal court. By dismissing outright, the district court converted the exhaustion requirement into a bar on federal review, and every circuit that has looked at this has reached the conclusion that that is an exceptional circumstance that entitles a habeas petition to equitable tolling. The other reason for equitable tolling in this case is the defective pleading doctrine. Mr. Blount's first habeas petition was a defective pleading in that it stated a basically valid claim, but it suffered from a procedural and curable technical defect, namely failure to exhaust. This is a doctrine that's been established since the 40s in the Herb against Pitcairn case. It comes up through American Pipe and Irwin. It's recognized there. Holland incorporates the entire body of traditional equitable tolling rules in the EDPA context. So this is an established basis for equitable tolling, and he's satisfied here. That tolling lasts for the duration of the proceedings on the first habeas petition, and when coupled with statutory tolling for his various state post-conviction proceedings, that renders the current petition timely as well. So there are three bases for finding the petition timely here. What's your basis for concluding that the D.C. Court of Appeals didn't apply a proper harmless error standard? So the court said that it was doing harmless error analysis, of course, but the only thing it said to explain its conclusion that the error was harmless was that there was overwhelming evidence. And although that may seem like that's enough, it's clearly not under Nader and Strickland. Nader is very clear that even in the face of overwhelming evidence, the question is whether a rational factfinder could reach a different conclusion. Otherwise, harmless error sometimes use this phrase, overwhelming evidence, to summarize what is really a more refined decision, which is that in the face of this particular overwhelming evidence, this particular conviction would have occurred were quite certain it would have occurred anyway. Well, in this case I don't think that works. On its face it doesn't satisfy the argument that it's harmless if the element is uncontested and there is overwhelming evidence. Here the element was contested, and that contestment was backed up by evidence in the record. That eyewitness description that did not match Mr. Blount, statements from Mr. Johnson that Mr. Blount was not involved in the shooting, evidence that Mr. Blount had walked away from the situation before the shooting occurred, the judge and the prosecutor agreeing on the record that a reasonable jury could find that Mr. Blount was not the shooter. In the face of all that, to just say overwhelming evidence doesn't satisfy the standard. And in Strickland, too, the court said even when there's overwhelming evidence, all that means is it is less likely that the error was harmful. Not that that is the end of the analysis. This court in the Udo case goes on for four pages after it says that there was overwhelming and comprehensive evidence, because that's not enough to conclude that the error was harmless. I'd like to reserve the balance of my time unless there are further questions. Ms. Kelly. Good morning, Your Honors. May it please the Court? Good morning. Catherine Kelly on behalf of the United States. First of all, the District of Columbia Court of Appeals here did not reopen Mr. Blount's direct appeal. The order specifically denied a recall of the mandate in this case, and it was clear that it was denied. What about the argument that, apart from technicalities of D.C. law, the Court of Appeals, the action there met the Jimenez standard? The Court being in a position to grant relief? Well, we don't believe the Jimenez case applies here, because ultimately what the Court did in the DCCA decision was deny the mandate in Jimenez. It was very clear that the Texas state court at issue had reopened the direct appeal in that case. So this is a very different situation than in Jimenez. The Court simply didn't take that step at the state level here to reopen the direct appeal, which is clear from its decision to deny the mandate. But the argument is that Jimenez doesn't concern itself with the particular sets of language that is used if the state court is in a position to grant relief. But the Jimenez case, there wasn't a question that the state court had reopened the direct appeal, whereas here it's very clear that the state court at issue did not reopen the direct appeal. And for that reason, any sort of tolling that could apply through the Jimenez case just can't occur here, because the state court did not take the action that was underlying Jimenez, which was to reopen the direct appeal. And I would also like to point out in regard to that, that Long did not create a collapsed procedure where there was the Court looking simply all at once at the underlying merits and whether or not to facially look at the merits in regard to recalling the mandate. The Long case specifically cited the Watson standard, the two-pronged standard, where first the Court has to decide whether or not to do something so it looks at the facial merits of the case, and then second, only if the Court recalls the mandate can it then go on to the second step of reopening the direct appeal. All that Long did really was saying, for purposes of this opinion, what we're going to do since the question of the facial merits and the question of the underlying merits of the ineffective assistance of counsel claim are exactly the same in that case. For purposes of writing this opinion, we're not going to repeat the same analysis twice. We're not going to repeat the same facts twice. Long did not report to create a one-step process. There are cases where, essentially, the two steps are indistinguishable from each other. The two steps — I'm sorry, Your Honor. Isn't that the case? The two steps — If that's true, should it be important to us that the label applied by the Court here, refused to grant the motion, should be determined? It is important to, when you're applying, and the important label is recall of the mandate. And here, it's very clear from the Court's opinion that it specifically denied the motion to recall the mandate. And under the Watson case and the DCCA precedent, if you do not recall the mandate, you absolutely and necessarily have not reopened the direct appeal. And, of course, if you do reopen the direct appeal, then you are, again, looking at the merits of the underlying ineffective assistance of counsel claim. But it's very important, as the DCCA has pointed out, that there is this two-step process. Because, as they said in the Watson opinion, they do not want to willy-nilly open up direct appeals in order to look at the merits. That would be a precarious position to take if I'm recalling the particular language correctly from the Watson decision. So they made very clear that, yes, you are looking at the merits in both instances, but you are definitely, under Watson, not reopening a direct appeal on the merits. Well, when you look at the importance of finality in State court decisions and so forth, it's in the... Well, the substance of the analysis is going to be exactly the same, whether it's two steps or one. In both, certainly, they are looking at the underlying merits of the ineffective assistance of counsel claim. But it's important, first, that the mandate... You don't reopen a case unless the court first finds that there is some facial-level merit to the underlying... In a particular case, you may be looking at many of the same facts, but it is still very clear, under District of Columbia Court of Appeals law, that you simply cannot reopen a direct appeal without first recalling the mandate. And the court has made very specific law saying that you are taking these two steps. And, yes, you may be looking at ultimately some of the same facts or, in some cases, all of the same facts. But that does not mean that just because they looked at the merits that they have reopened the direct appeal. And they haven't here, because it's clear that they denied the request to recall the mandate. Ms. Kelly, what troubles me about this case is that this procedural bar... Let's step back from this. This man was convicted under a jury instruction that was later found to be unconstitutional, right? That's correct. And so you better win on your procedural bar, right? Because otherwise, if we get to the merits of it, we have possibly somebody who was wrongly convicted, right? Well, I don't believe so, because as the DCCA also found in determining that it was not going to recall the mandate, that there was overwhelming evidence that Mr. Blount was the sole shooter in this case. So you already have a decision under the Strickland standard, which is the only standard that applies when you're looking at ineffective assistance counsel claims. This is... The question in this case ultimately looks at whether or not Mr. Blount would have been prejudiced by in aiding and abetting instruction that was later found unconstitutional under the Wilson-Bates... And just the way you phrase that, you start with sort of a presumption that, yes, I think he would be, right? Well, certainly the DCCA believed that, because they found in denying the motion to recall the mandate that there was overwhelming evidence that he was the sole shooter. We have no reason to believe that they were applying the correct standard. No, we do, and it wasn't secret. The Court may indulge me for a moment. The order said that, based on the entire record, any error was the sole shooter. Therefore, appellant has not met the high standard necessary to recall the mandate. It cites, then, the Watson case, which determines the standards for recalling in the mandate, and also applies... ...to an error involving a missing element. It applies the standard of Strickland in determining whether Mr. Blount... This is a special case. This is Strickland where the error in question is a failure to raise on appeal a winning argument about a necessary charge. Well, in this situation, the Court applied the Strickland standard, which is the... And the standard under Strickland is always the standard that applies when you're looking at ineffective assistance of counsel. ...in terms of what the Court of Appeals would actually do. And the Court of Appeals, and then I guess you're also rejecting what would happen on remand. If the Court of Appeals would remand for a retrial under a proper charge, then even if you're thinking that the test is pure Strickland test, it comes out against the government. Well, I don't believe so, because that's not how you look at the test. First of all, you apply Strickland because it's an ineffective assistance of counsel claim. ...in effective assistance on appeal was a failure to include an element in the charge. All the case law that I am aware of says that if you're looking at an ineffective assistance of counsel claim, you're applying Strickland prejudice. You are not applying a special standard if the alleged ineffective... But you decided you didn't share with us any of those cases. Well, Watson, which is the case that's relied on in the Blount case by the DCCA, specifically applied the Strickland standard to a case where the appellant was arguing ineffective assistance of counsel at the appellate level, which is what he's arguing here. Well, what was the error there? I don't recall off the top of my head, Your Honor, but the point is, I know... What makes the difference? I mean, does it have a whole menu of different standards for assessing harmlessness? I'm aware of no case law that changes the prejudice standard or applies a different standard if your claim of ineffective assistance is a constitutional error being alleged or a nonconstitutional error being alleged. You're talking about an ineffective assistance of counsel at the appellate level. Right. That's all Mr. Blount's seeking. You've got to project what would happen. And if it's the sort of error that involves almost automatic remand for a new trial, then it seems to me, it turns out that it is a dispositive error. But, Your Honor, this would not require an automatic remand for a new trial. That's not what would occur here. You're looking at whether or not this alleged error, alleged deficiency, would be prejudicial given the evidence in the case that was presented. You have to determine whether or not appellate counsel... So you're assuming, you're assuming that the Court of Appeals, reviewing ineffective assistance of counsel for the counsel, ineffectively failed to make a clearly winning argument about a necessary element of the crime, would just say, oh, well, he hasn't carried his burden? What we're saying is this, first of all, was not... Which he doesn't have once you have a missing element. Our point is that this was not a clearly winning argument. It certainly was not a clearly winning argument at the time Mr. Blount went to trial and at the time his direct appeal was done. So we're not even conceding a deficiency by counsel given that the Strickland standard tells you you're not looking at these things in hindsight. You're looking at what the attorney at the time was aware of. We're also saying that given particularly the DCCA's decision on the motion to recall the mandate and denying that motion, the Court specifically was saying under the overwhelming evidence, that was presented at Mr. Blount's trial, which is what you're really looking at. You're not going forward and saying if Mr. Blount got a new trial tomorrow, whether or not it would be wrong not to apply a Wilson Bay instruction. What you're looking at is look at the trial that occurred in Mr. Blount's case before Wilson Bay was even decided. Given all the facts and all the evidence that came in at that trial, was the lack of a Wilson Bay type instruction prejudicial to him in that regard? And the DCCA has already ruled that it was harmless due to the overwhelming evidence. And that implying Strickland in this case, as the Court did, was the appropriate standard. And for all those reasons, we believe that there's no basis to find that Mr. Blount's application here for a certificate of appealability was timely. There's also no requirement that the district court, in denying the first habeas petition here, grant a Rhine stay. This circuit has not said that a Rhine stay is required. And certainly none of the circuits that the defense cites, or the amicus counsel cites, say that the Court has to grant a stay where an appellant hasn't even sought a stay. And in fact, this Court denied a certificate of appealability when Mr. Blount challenged the dismissal of his original habeas petition. So in saying that there should be equitable timing here, amicus is actually even asking this Court to deny its own prior decision in this case. And in addition, there is no defective pleading here. If there's no habeas case that supports that an unexhausted claim is quote-unquote defective, as the amicus counsel says, were that to be the rule, it would swallow a deep hole by creating unlimited time periods, unlimited stays, simply because you had filed an unexhausted claim in the federal court rather than first going to the state court. And that would simply be an open-handed placeholder for anybody who thought maybe later, after he filed his state cases and exhausted those opportunities in the state court, at any point then could come back to the federal court and say, I'm not untimely. And so for all of those reasons, we believe that the Court should deny the application for a certificate of appealability here. Thank you, Your Honors. Thank you. Does Mr. Rhine have any time left? All right. Why don't you take two? Okay. Thank you, Your Honor. I'm going to try to make a few very quick points. Okay. On the merits of his claim on deficiency, the DCCA itself said that the appellate counsel was not justified in failing to raise the challenge on appeal. The precedent was very weak. If you look at the Wilson Bay panel decision, precedent was weak, commentators were against it, the weight of the majority rule was against it, trial counsel raised it multiple times vigorously. Blount asked his appellate counsel to raise it. It's clearly deficient to have failed to raise it here, and the prejudice is real. The trial judge said at trial, a reasonable juror could certainly find that Mr. Blount was not the shooter. If you look at pages J, 67 to 70 and 87, there's the judge and the prosecutor saying the juror could find he was not the shooter. The government has never pointed to any evidence that he had the requisite mens rea as an accomplice. On Reins, the government says that Mr. Blount had to request the stay and that there's no precedent that he didn't have to request a stay, but DeLong in the First Circuit, Ursinoli in the Third, Griffin in the Sixth, Jefferson in the Ninth, and Zarvella in the Second, all arose in postures in which the petitioner had not requested a stay or other procedural accommodation for his exhausted claims and was entitled to one, even when the first district court, you know, and the first petition had been dismissed and affirmed. And finally, on the defective pleading rule, there's no risk of this becoming an unbounded situation. First of all, the claim has to give, the first petition has to give notice of the claim, and so far it seems like courts want it to be an identical claim. This case involves the identical claim between the two habeas petitions. In addition, there are time limits that are still going to be ticking on state post-conviction proceedings that will cabin how long this can go on for. So I don't think that's a significant risk. And this is an established doctrine. It's 50 or 60 years old at least. Certain courts have recognized it. We're not asking you to make any new law in terms of recognizing defective pleading as a basis for equitable tolling. Can we go back to your argument that Jimenez, that either the case for the one, the Jimenez test is satisfied? Well, I think the Jimenez test is ultimately whether the conviction is capable of modification. And what the DCCA seems to be saying, and this is consistent I think with the general practice, is that if you take a hard look at the arguments in the record, then that is when the judgment is capable of modification. There's nothing further to do to make it capable of modification. And the DCCA has the power itself to decide whether to reopen the judgment or not. Now formally it said it's denying the recall motion, but the collapse procedure allows the court to do the hard look in the posture of the recall motion. And the government seems to act like long doesn't exist, but long clearly says we combine those procedural steps. We are combining our discussion of the merits of the motion with the resolution of the ineffective assistance of counsel claim. Because it was the same issue, the record was sufficient to reach the ultimate merits, there was judicial economy in doing so, and it got the answer it needed to get. Here, that's what the court did. It just came out the wrong way because it applied the wrong standard. That standard under NADER, it's the NADER standard. Strickland says you use the governing standard for the error. The error here is the misdescription or the omission of the proper element that is governed by NADER. And NADER says it's uncontested and overwhelming evidence such that a rational fact finder could not find differently. How is a capable of modification standard satisfied or not satisfied? I mean, I would think as soon as a court has its hands on a case, it's capable of modifying the judgment. In some sense, I think that's right. But I think that the distinction that should properly be drawn here consistent with DCCA decisions is that if the court is looking only at a procedural barrier to considering a motion such as that it's untimely or looking at the motion as a prima facie matter, almost like what this court and district courts do when considering the motion for COA, is there a debatable claim here? We're not exerting jurisdiction and considering this on the merits. We're simply deciding whether it's worth doing that. And the DCCA can do that and can signal that it's doing that by using language that tracks that posture, by saying this claim was frivolous or it's only supported by conclusory arguments and no facts in the record. But there's a separate way of approaching the question, which is getting to the real merits, taking a hard look. When the court does that, that would be the case. Acknowledge that it was reopening? In Jimenez, yes. And here's where I'm stuck on. We just don't have that here. In fact, we've got language that suggests what doesn't suggest. It says just the opposite. The mandate is recalled. To me, that's the hurdle that I have to think through. I understand that, Your Honor. But in Jimenez, you don't have a class procedure available or arguably being used. Here, Long says that you've got a principle that Ms. Kelly referred to. You've got a principle where you're looking to the state court to tell you, have you reopened or not? And the state court in Jimenez said, yeah, we've reopened, so go ahead. Here, you look to the state court and they say we didn't reopen. Well, in words to that effect. To me, that's the distinction. Anything you can help me to understand those. I think the best thing here is that in Long, it's a good example. It says, we're going to consider the merits in the posture of this recall motion, the underlying merits, the hard look. And what it does is it says, we are basing our decision on a review of the whole record. I believe that is the exact phrase, the whole record. That is a hallmark of the kind of hard look that occurs on a reopened direct appeal. That's what Long did. And you have the identical or virtually identical thing in this case where the order says, based on a review of the entire record. And given that the motion really does satisfy the standard, it is a very detailed motion that cites the relevant precedent. It has a fairly clear, it was pro se, but it was well done. It lays out the argument. It points to evidence. I would find it shocking if the court said that didn't even meet the prima facie standard for a recall motion. And so I think the only way to understand what the court was doing here, given those facts, is that it was reconsidering the appeal. Is there any further questions? Thank you, Your Honor. Thank you. Mr. Lane, you were appointed by the court to represent Mr. Blunt. And you've done an excellent job. And are you Mr. Garg? Your brief was very well written. So thank you all. Thank you. Appreciate it.
judges: Henderson, Griffith, Williams